Crossley v. Moore.

---

## CHARLES CROSSLEY v. WILLIAM A. MOORE.

1. Where a debtor, after being discharged from the obligation of his debts by a deed of composition with his creditors, voluntarily gives a security for a debt from which he is discharged by such composition, and which is only due in conscience, such security may be enforced in a court of law.

2. But any agreement with one creditor for an advantage to him over other creditors, made to induce him to join in the composition, or required by him as a condition upon which he shall become a party to it, which is not provided for in the composition deed, and is not disclosed to the other creditors, is utterly void, and is incapable of being enforced or confirmed even as against the assenting debtor. A security given in pursuance of such a bargain or a subsequent promise of payment, is equally void with the antecedent agreement; and money paid by the debtor under such an agreement, in excess of the due proportion of such creditor's debt, may be recovered back, unless it be paid under such circumstances as to be regarded in law as a voluntary payment.

3. Under what circumstances a payment of money in pursuance of such a bargain will be an involuntary payment, and the proper form of action by the debtor to recover back the money so paid, considered.

On rule to show cause why a verdict in favor of the plaintiff should not be set aside.

The firm of Crossley & Moore was formed by articles of partnership dated December 23d, 1872, Charles Crossley and George W. Moore being the general partners; William A. Moore being a special partner, and, as such, contributing to the capital the sum of $10,000. In the summer of 1873, the firm became embarrassed financially, and proceedings in bankruptcy were commenced against the firm. Pending these proceedings a project was set on foot for a compromise with the creditors of the firm, at the instigation of Crossley.

William A. Moore, the special partner, on the 23d of July and 4th and 12th of August, 1873, lent the firm three notes made by him to the order of the firm, for $15,000 in all. These notes were endorsed by the firm, and discounted by the Merchants' National Bank of Newark.

On the 27th of December, 1873, an agreement preparatory to a settlement with the firm creditors was made between and signed by all the partners. At the time of the making of this agreement, the firm was indebted also to William A. Moore in the sum of $2000 for moneys loaned the firm, and in $1600 for his share of profits previously made. The amount was called $4000 in the negotiations for a dissolution.

The agreement of the 27th of December, 1873, was between and signed by Crossley and the two Moores. It recited that Crossley was making an effort to compromise with the creditors of the firm on the basis of fifty cents on a dollar. By this agreement Crossley agreed to adjust William A. Moore's claim for the notes held by the bank, either by paying the sum of $15,000 to William A. Moore, to enable him to pay the bank, or by paying off the notes to the bank, and also to settle the other indebtedness of the firm to William A.

Moore above mentioned, by giving his (Crossley's) notes for $3000 and $1000, and pay all the costs and expenses of the litigation in New Jersey, and all moneys laid out and expended in paying the former employés of the firm, and to procure the release of William A. Moore and George W. Moore from all liability for firm debts. In consideration of, and upon condition that Crossley performed the above undertakings, the two Moores agreed that they would sign a consent to a dissolution of the firm, and assign and deliver to said Crossley all their right, title and interest in the assets and property of the firm.

Subsequently a composition deed was prepared, bearing date on the 20th of January, 1874, and signed and sealed by all the firm creditors, except the bank which held these notes. This deed is as follows:

"The undersigned, all the creditors of the firm of Crossley & Moore, hereby severally agree to release said firm from all indebtedness to us, upon the following conditions, viz.:

"1. That the assets of said firm shall be legally conveyed by said Crossley & Moore to Henry J. Yates, in trust for the creditors.

"2. That the said firm shall be dissolved.

"3. That the said Charles Crossley shall give said creditors his individual notes, payable in four (4) months and eight (8) months, with interest, for an amount equal to fifty (50) cents on the dollar, upon the whole amount of the indebtedness of said firm to said creditors, which shall be in full satisfaction and discharge of said indebtedness.

"4. And it is further agreed, that on the payment of said notes by said Charles Crossley, said trustee shall transfer or turn over to said Charles Crossley all the residue of the property and assets of said firm. But it is hereby expressly understood and agreed that after said assets are conveyed to said trustee, that the said Charles Crossley shall have the management and control of said assets and property towards the payment of his said notes, and said assets shall be applied,

under the advice of said trustee, to such payment, until said notes are all paid."

Crossley and George W. Moore signed this deed, and William A. Moore became a party to it, signing his name among the creditors, "Wm. A. Moore, as a creditor."

An assignment to creditors under the composition deed was prepared in conformity with the terms of the deed. It bears date on the 4th of February, 1874, and was executed by Crossley and George W. Moore. It was not signed by William A. Moore, in the usual place of signature, though he was named in it as one of the assignors; but on the 10th of February, 1874, he gave his assent thereto by signing a memorandum at the foot of the deed of assignment, as follows:

"So far as I am concerned as a special partner, (my interest in the partnership being only as a special partner), I assent to the foregoing transfer."

This memorandum was signed by William A. Moore, in Mr. Guild's office in Newark, at an interview at which all the parties were present.

The following agreement, annexed to the agreement of the 27th of December, 1874, was signed by Crossley and William A. Moore:

"In view of the fact that Mr. Crossley cannot and has been unable to carry out the foregoing agreement, so far as the cash provided to be paid the bank or William A. Moore is concerned, and that Mr. Crossley must have time for a portion: Now, therefore, it is agreed that the foregoing agreement be so far modified in reference to said cash, as follows: That Charles Crossley deliver to the bank for the $7000 balance of the $15,000, his three notes, dated 10th of February, 1874—one for $3000, payable at four months; one for $3000, payable at eight months; and one for $1000, payable at eight and a half months, with interest; and that he deliver to William A. Moore his (Charles Crossley's) note, dated February 10th, 1874, payable nine months after date,

for the $4000. *In case this note is not paid at maturity, then the same is to draw interest from its date.*"

This supplementary agreement bears date on the 10th of February, 1874. In fact, it was drawn and signed on the day William A. Moore signed the composition deed, and at the interview at Mr. Guild's office, the words in italics were interlined, and the date of the 10th of February, 1874, was added.

In the meantime the bank had brought suit against William A. Moore on the said notes, and had recovered a judgment against him on the 3d of January, 1874, for $15,325.92.

On the same 10th of February, 1874, immediately after the two papers were completed at Mr. Guild's office, (the assent of William A. Moore to the assignment to Yates, and the supplemental agreement of that date), the parties went to the bank and settled the judgment of the bank. The claim of the bank was settled by applying thereto $8000, which was in part money, assets of the firm of Crossley & Moore, included in the assignment to Yates, and part money belonging to Crossley, and by satisfying the balance by three notes made by Crossley, amounting to $7000. As collateral security for the payment of the notes made by Crossley, a note made by William A. Moore, endorsed by one John M. Littell, was given to the bank. Of the notes for $7000, Crossley paid $6000 to the bank, and the bank recovered the balance of $1000 by suit against Littell on the note he endorsed as collateral security. Littell subsequently recovered of Crossley, by action, the amount he was compelled thus to pay.

Crossley having, as above mentioned, satisfied the full amount of the indebtedness to the bank, brought this action to recover of William A. Moore the one-half part of these moneys, and at the trial had a verdict therefor. The propriety of that verdict is the subject matter of consideration on this rule.

Argued at November Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the defendant, *W. S. Whitehead.*

*Contra, F. W. Stevens.*

The opinion of the court was delivered by

DEPUE, J. The theory on which this action was brought is that the agreement of Crossley with the defendant, to secure him an advantage beyond the other creditors of the firm, was illegal, and that payment of the money in question was procured by a compulsion arising from the situation of the parties.

An objection was made *in limine* that the money having been paid to the bank, and no part of it having gone into the hands of the defendant, an action for money paid, had and received will not lie. The money was paid by the defendant's procurement in satisfaction of a claim against him which had gone into a judgment, and the payment enured to his benefit. In *Smith* v. *Cuff*, 6 *M. & S.* 160, the debtor gave the creditor his promissory notes, which the latter negotiated, and payment was enforced from him by the holder. It was held that the debtor might recover of the creditor the amount so paid, in an action for money paid, had and received. In *Stock* v. *Mawson*, 1 *B. & P.* 286, a creditor held acceptances of third persons, as collateral for the full amount of his debt. He signed the composition deed, and recovered his dividend, and afterwards received moneys of the acceptors on the acceptances. It was held that the amount so received might be recovered by the debtor in an action for money had and received. In *Horton* v. *Riley*, 11 *M. & W.* 492, the defendants signed a composition deed, and received a composition upon a private stipulation with the plaintiff that the excess of his debt beyond the composition should be secured by the joint promissory note of the plaintiff and two sureties. The note was given, and negotiated by the defendant before it was due, and was paid by the plaintiff to the holder at maturity. An action for money paid, to recover of the defendant the sum so paid, was held properly brought. The case of *Turner* v. *Hoole, Dowl.*

& *Ry. N. P.* 22, is a decision to the same effect with regard to the form of action, though that case may not be supported to the extent of allowing the action to be brought, notwithstanding the payment was made by the debtor to the creditor voluntarily. The two cases cited by the defendant's counsel, ( *Wilson* v. *Ray,* 10 *A. & E.* 82, and *Took* v. *Tuck,* 4 *Bing.* 224,) resulted adversely to the debtor, for the reason that, in the one case, the payment had been voluntarily made, and in the other, the bond had been voluntarily given, a considerable time after the composition deed was executed. The action was properly brought in this form.

It was also contended that the composition deed did not apply to the claim involved in this controversy. William A. Moore signed the composition deed " as a creditor," without any qualification or reservation. The notes, it is true, were held by the bank, and the debt was due and payable to it. But the defendant was the maker of the notes—the party primarily liable for their payment, and they were credited to him on the firm books. The composition deed purports to embrace all the creditors of the firm, and there is evidence that, at a meeting of the creditors to consider the proposition of a compromise, the existence of this debt was referred to, and the defendant represented that he was a creditor of the firm in the sum of $15,000 or $20,000, and included these notes as part of that indebtedness; and that the firm books were produced at that meeting, in which these notes were credited to the defendant, and in the schedule of liabilities annexed to the deed of assignment to Yates, a liability to the defendant, in the sum of $19,847.83, was stated, on which the dividend of the defendant, at fifty per cent., amounting to $9923.83, was carried out. The question whether the parties so dealt with each other and the creditors participating in the compromise, as to convert the $15,000 into an actual indebtedness of the firm to William A. Moore, was properly left to the jury.

The important question in the cause is the effect of this composition upon the agreement of the 27th of Decem-

ber, 1873, and the supplementary agreement of the date of February 10th, 1874, under which the defendant claims a right to have the indebtedness represented by these notes paid in full, notwithstanding the composition deed.

A contract of composition by a debtor with his creditors has characteristics peculiar to that class of agreements, which distinguish it from an ordinary contract *inter partes*. In one sense it is regarded as a contract of the debtor with his creditors—that on payment of a stipulated proportion of his debts, he shall be discharged; in another sense it is a contract of each of the creditors with the others, that they shall be placed on the basis of entire equality and reciprocity among themselves, that each shall receive his stipulated amount and nothing more. Indeed, it is the mutual agreement of the creditors among themselves that each will surrender a part of his debt that gives a consideration to the contract, and binds the creditors individually to abide by the agreement, and take a part of the debt in satisfaction of the whole. In transactions of this kind the utmost good faith is required, and one creditor cannot become a party to the arrangement and sign the composition deed, and, by a secret bargain with the debtor, obtain an advantage over the other creditors. Such secret arrangements are utterly void, and are incapable of being enforced or confirmed, even as against the assenting debtor, and money paid under them may be recovered back as having been obtained against principles of public policy. 1 *Story's Eq. Jur.*, §§ 378, 379. So far-reaching is the force of the principle that the creditors shall stand on an equality, that a promise by a third person to pay one creditor an additional sum, to induce him to sign the composition, is illegal, though the debtor was not injured, nor the funds for other creditors rendered less available thereby. *Knight* v. *Hunt*, 5 *Bing.* 432. And a secret bargain of the debtor with one creditor, to pay him in full, in consideration of his becoming surety for the payment of the composition to the other creditors, was set aside on a bill filed by the debtor. *Wood* v. *Barker, Law Rep.*, 1 *Eq. Cas.* 139. One creditor cannot obtain any ad-

vantage in the composition over the others, unless it be obtained by the assent, express or implied, of all the creditors who are parties to it. *Pfleger* v. *Browne*, 28 *Beav.* 391. The cases on this subject are quite numerous. Many of them are cited in the note to *Cullingworth* v. *Loyd*, 2 *Beav.* 385, and are referred to and commented on in *Forsyth on Composition with Creditors* 104–137; and in the opinion of Blatchford, J., in *Bean* v. *Amsink*, 12 *Am. L. Reg.* (*N. S.*) 379, *and note.*

Relief being given against secret arrangements of this sort, upon grounds of public policy, and not for the sake of the debtor, the debtor, whether he was induced to agree to the secret bargain by coercion of the favored creditor, or as a mere volunteer, aided in the intended deception, may avail himself of the fraud upon the other creditors to avoid the arrangement. He is not regarded as *in pari delicto*. 1 *Story's Eq.*, § 379; *Forsyth on Compositions* 105. The observations of Cockburn, C. J., in *Atkinson* v. *Denby*, 7 *H. & N.* 934, fully explain the reasons on which the assenting debtor is permitted to maintain an action to recover back money paid under such an arrangement. Thus, money paid to induce a creditor to sign the composition deed may be recovered back by the debtor. *Atkinson* v. *Denby*, 6 *H. & N.* 778; 7 *Ibid.* 934. And a note not in the hands of a *bona fide* holder, or any other security for the balance of the debt above the composition, subsequently given in pursuance of such a bargain, or a subsequent promise to pay the excess, is equally void with the antecedent agreement. *Cockshott* v. *Bennett*, 2 *T. R.* 763; *Harrhy* v. *Wall*, 1 *B. & Ald.* 103; *Cowper* v. *Green*, 7 *M. & W.* 633; *Mallalieu* v. *Hodgson*, 16 *Q. B.* 689; *Geere* v. *Mare*, 2 *H. & C.* 339.

A distinction is to be observed between an agreement to pay a creditor more than his proportion, made in connection with the proceedings for a composition, and a disconnected contract to that effect, voluntarily made afterwards. In *Cockshott* v. *Bennett, supra,* Lord Kenyon said, "If a bankrupt or an insolvent, after becoming free from his engagements, having no restraint on his mind, voluntarily give security for a former

demand, which is only due in conscience, such security may be enforced in a court of law." The difference between these two kinds of undertakings is also referred to by Best, C. J., in *Knight* v. *Hunt, supra.* "It is a very different thing," says the Chief Justice, "where, without any previous contract, a debtor, after having discharged his engagements under the composition deed, honorably adds the remainder; a transaction of that kind is clearly distinguishable from the present, where, by previous and express contract, the whole of the debt, or an equivalent, is secured to a particular creditor." On this distinction, *Took* v. *Tuck* was expressly decided, as appears from the report of that case in 4 *Bing.* 224, and 9 *B. & C.* 437.

The doctrine may be considered as entirely settled, that any agreement with one creditor for an advantage to him over the others, made to induce him to join in the composition, or required by him as a condition upon which he shall become a party to it, which is not provided for in the composition deed, and is not disclosed to the other creditors, is utterly void, both as to the debtor and as to the other creditors ; and that money paid under such an agreement, in excess of the due proportion of such creditor's debt, may be recovered back, unless it be paid under such circumstances as to be regarded in law as a voluntary payment.

This case will be examined in the light of the principles just announced.

The bankruptcy proceedings against the firm were in the name of Charles E. Moore, a son of the defendant, and were manifestly instituted at the instance of the latter, for the reason that Crossley, as one of the members of the firm, refused to make a payment on these notes. The written proposition of Crossley to the defendant, which resulted in the agreement of the 27th of December, 1873, was made to procure a settlement of the proceedings in bankruptcy, and was based on the idea of a compromise with all the creditors of the firm, and a final settlement of all the affairs of the partnership.

At a meeting of the creditors the defendant represented the

amount of these notes as part of the firm indebtedness to him. At least, the jury, on competent evidence laid before it, has so found. The composition deed, when first presented to the creditors, was not signed by the defendant, and the proof in the cause is, that creditors positively refused to sign it until it was first signed by him. It was taken back to him and his signature affixed, and then it was signed by the other creditors. The supplementary agreement to which the date of February 10th, 1874, was afterwards affixed, was prepared and signed by these parties at the same time the defendant affixed his signature to the composition deed. That the intent of that paper was to secure an advantage to the defendant over the other creditors, is clearly shown by the fact that it stipulated for the payment in full of that portion of the defendant's debt due from the firm, which confessedly was embraced in the composition, and on which it is conceded he was thereby entitled to payment only at the rate of fifty cents on the dollar. Two of the creditors, whose claims amounted to nearly $11,000, and more than one-sixth of the whole firm indebtedness, including the amount of these notes, testified that they were ignorant of the fact of the existence of any agreement by which the defendant was to get more than other creditors, and there was no clear evidence that the agreement between these parties to that effect was made known to any of the creditors. The circumstances under which this agreement came into existence were such as to bring it directly within the principles of law by force of which agreements of that character are made void.

Nor is the plaintiff concluded from a recovery in this case on the ground that the payment of the money was a voluntary payment. The money was paid on the 10th of February, 1874; but the composition arrangements were not concluded until that day. The composition deed was signed by some of the creditors conditionally upon its being signed by all. Charles E. Moore, the defendant's son, was a creditor, and he did not sign the composition deed until at the interview at Mr. Guild's office, on the 10th of February. The articles of dissolution which were contemplated by the

composition deed, were signed by Crossley, and the deed of assignment to Yates executed at the same time. On the same occasion, the supplementary agreement was added to, by the insertion of the clause in italics, and was dated, and all the notes which passed between the parties were made and delivered. Until the interview at Mr. Guild's office everything was *in fieri*. Nothing was consummated—completely finished—until that time; and as soon as the papers were all signed and executed, the parties repaired to the bank, and its claim was adjusted and satisfied.

Under the evidence at the trial, the jury was justified in concluding that the agreement on which the defendant rested his right to have these moneys paid in full, was obtained by coercion exercised by means of the situation of the parties, and in fraud of the other creditors, and that the money was paid under the same compulsion.

Nor was any act of rescission necessary on the part of the plaintiff, to enable him to take advantage of the illegality of the transaction, other than the bringing of this suit.

The composition deed is peculiar in its form, and comprises more than is usually embraced in an agreement of that kind. It manifestly was designed to effect two purposes—a settlement with the creditors of the firm, and the closing up of the business of the partnership as between the members of the firm. For these purposes it contained two classes of provisions—the one providing for the settlement of the firm debts at fifty cents on the dollar, and the assignment of the firm assets to Yates, to secure the payment thereof; the other providing for the assumption by Crossley individually of the payment of the stipulated composition, and the transfer to him of the residue of the property and assets after the payment of the composition to the creditors, and also for the dissolution of the firm. Crossley was to give his own individual notes to the creditors for the fifty per cent., and they were to accept the same in full satisfaction and discharge of their indebtedness. The effect of these several stipulations was to dissolve the partnership—to make Crossley individu-

ally liable for the percentage of the creditors—to discharge the other partners, and to transfer to Crossley the firm property and assets, subject to the lien thereon to secure the payment of the stipulated composition to the creditors. Crossley and George W. Moore executed the composition deed, and so did William A. Moore. William A. Moore, it is true, became a party to it " as a creditor," but he thereby became bound in equity, if not in law, to the terms and conditions therein set forth, as they were mutually agreed upon by all the persons who were parties to it.

The deed of assignment to Yates was precisely and in every respect in exact accordance with the terms of the composition deed, and was such as was necessary to carry into effect the stipulations contained in the latter. If Crossley did not acquire the legal right as against his partners, to retain the surplus assets as his own property by the composition deed, he did not acquire that right by force of the assignment to Yates, and he must still account for them under the original articles of partnership. There was not, therefore, any new or additional consideration derived under the assignment to Yates which was not embraced in the composition deed.

If it be contended that under the agreement of the 27th of December, 1873, and the supplementary agreement of February 10th, 1874, Crossley acquired a clear and undoubted right to these assets, as his sole and individual property, the answer to that contention is, that the bringing of this suit is a repudiation of those contracts, and a disclaimer of all rights under them. The success by the plaintiff in this suit depends on his ability to overturn entirely those transactions, and a denial of his right to sue would affirm and set up those agreements, and give effect to a transaction which, to adopt the language of Holroyd, J., in Smith v. Cuff, " the law condemns as unlawful, because unjust."

The rule to show cause should be discharged, and judgment be entered on the verdict.